**PALACIOS SEAFOOD, INC.,**
**Plaintiff–Appellant,**

v.

**PILING, INC., and Matagorda County**
**Navigation District Number One,**
**Defendants–Appellees.**

No. 89–2078.

United States Court of Appeals,
Fifth Circuit.

Dec. 1, 1989.

---

©⇒617

Otto D. Hewitt, III, Michael B. Hughes, Kenneth J. Bower, McLeod, Alexander, Powel & Apffel, Galveston, Tex., for plaintiff-appellant.

Clann, Bell & Murphy, Houston, Tex., for defendants-appellees.

Kerry L. Neves, Mills, Shirley, McMicken, & Eckel, Galveston, Tex., for Matagorda County.

Before CLARK, Chief Judge, GEE and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

We are asked to decide whether article I, section 17 of the Texas Constitution ("section 17") requires the state to provide compensation to a privately-owned business for damages suffered incident to a waterfront restoration project. The project was undertaken to abate ground erosion that had destabilized the plaintiff's waterfront building, in particular, and other property located along a seafront basin, in general.

The instant suit is not a traditional "inverse condemnation" action, as where private property owners are forced to sue a sovereign in order to recover compensation for a government-sponsored "taking" of their property. Rather, this action focuses upon the kinds of *damages* incident to governmental activity that qualify as compensable under the state constitution. This dispute is complicated by the fact that the plaintiff's damaged building was abnormally fragile because of prior ground erosion, and was threatened with destruction as deterioration of a protective seawall exposed it to the sea. Moreover, the building was constructed upon government property and was likely to suffer some measure of damage in the course of any waterfront restoration project.

Like any lessor in Texas, the state is not free to allow its property to deteriorate and thereby cause damage to a lessee's property; remedies are available under Texas law making such nonfeasance actionable. We conclude, however, that a state constitutional claim pursuant to section 17 is not among this plaintiff's available remedies.

To hold for the private property owner here would be to subject Texas and its political subdivisions to constitutional attack for substandard repairs incident to their obligations as lessors. Section 17, as interpreted to date, becomes operative if government-sponsored damage results pursuant to positive action, not inaction. But we doubt that Texas courts would endorse a constitutional rule that effectively penalizes the state for undertaking a necessary restoration project, while holding it harmless if it stood idle and allowed the property owner's building to tumble into the sea. Hence, because we conclude that the Texas constitution does not afford relief under the facts of this case, we affirm the district court's dismissal of the state constitutional claim.

I.

A privately-owned seafront business suffered extensive property damage after the

government made long-overdue repairs to a protective seawall. Designed and built in the 1950's, this wooden seawall, or "bulkhead," had well exceeded its twenty-five-year useful life.

Responsibility for the bulkhead and adjacent waterfront property rested with the Matagorda County Navigation District Number One (the "District"), a political subdivision of the State of Texas.[1] The District owned the waterfront real estate upon which Palacios Seafood, Inc. ("Palacios"), conducted shrimp-processing operations for local fishermen. Palacios owned the building but paid rent to the District for use of the land.

Palacios purchased the 5,000–square–foot building in 1983 from the individual who had constructed it during the 1960's.[2] With no opposition from the District, the original owner selected a site adjacent to the newly-built wooden bulkhead. In fact, the foundation of the building was only a few feet from the bulkhead. This feature later appealed to Palacios because, consistently with its business, it could easily onload fuel for shrimp boats and offload the fishermen's catch for processing.

In 1985 the District hired an independent contractor, Piling, Inc. ("Piling"), to replace the dilapidated bulkhead in front of plaintiff's building and the other shorefront property it controlled. The District admits that it could not ignore the problem of deterioration any longer and, given sufficient revenue in its budget, would have replaced the bulkhead five to ten years earlier.

The bulkhead in front of Palacios was particularly decayed, in part a result of prior dumping of fish waste that had caused a destructive growth on the wooden pilings. The earth supporting the building's foundation had been eroded and undermined,[3] and Palacios's owners testified that, prior to construction, its building already had experienced some cracks in the foundation. All parties agree that in the absence of timely repair, Palacios's business actually would have tumbled into the sea. In fact, the owners of Palacios, along with other area merchants, actively lobbied the District to restore the neglected bulkhead.

Prior to construction of the new bulkhead, representatives from the District and Palacios met at least two times. A verbal agreement was reached to proceed with the project, although no written release from liability was executed. There is some uncertainty as to whether the District asked for a written release or whether, as suggested by the District, that issue just "fell through the cracks."[4]

It is nevertheless evident that the District appreciated the risk associated with the replacement of the bulkhead. A District commissioner testified that "we knew that it was a good possibility the structure would collapse because of this construction and the condition it was in." Reference to potential damage was also noted in the contract with Piling.[5] During installation

---

1. The legislature created the Navigation District under art. 16, § 59 of the state constitution; the District operates under the provisions of the Texas Water Code. *See* Tex.Water Code Ann. chs. 60–61 (Vernon 1972).

2. Palacios purchased its building from the prior owner "as is" for approximately $63,000. Owners of Palacios estimate that they invested enough in capital improvements to increase the building's fair market value at the time of damage to around $97,000.

3. Testimony indicated that a man once fell through the surface of the ground adjacent to the bulkhead when he disembarked from a shrimp boat.

4. Mr. Holsworth, the chairman of the District's commissioners, testified that he had instructed counsel to execute a release after reaching a verbal agreement with Palacios's owners. Until initiation of this suit, he believed the release had been executed. Mr. Aparicio, part owner of Palacios, denied having agreed to release the District from liability if it undertook the restoration project.

5. The District's contract with Piling provided that

    installation of the ... anchoring system may cause further damage to the foundation and/or super structure of the building.... During the piling installation, these buildings shall not be occupied due to the possibility of collapse and vibration caused by the pile driving operation.

of new pilings adjacent to Palacios's property, the worst predictions proved accurate: Extensive damage resulted to the building, requiring repairs in excess of $40,000.[6]

This case was tried before a magistrate as an admiralty action. Palacios settled its claim with Piling but continued its admiralty claim in federal court against the District, alleging that (1) the damage it suffered amounted to a compensable claim under section 17 and (2) the District was negligent in its construction of the bulkhead.

## II.

### A.

The magistrate concluded that there was no "intentional taking" under section 17[7] and that, if anything, the new bulkhead "enhanced" the value of plaintiff's property. The court also rejected Palacios's negligence claim, holding that sovereign immunity barred recovery. The magistrate directed a verdict in favor of the District.[8]

■ On appeal, Palacios argues that the Texas Constitution expressly includes *damages* to private property as recoverable against the state, and it challenges the magistrate's suggestion that the value of its building was "enhanced" by such damage. It also argues that by entering into a lease agreement, the District waived its defense of sovereign immunity with respect to a "breach of contract" claim which it allegedly litigated.[9]

■ The District responds that the section 17 issue is waived on appeal as not having been adequately litigated before the magistrate. We find this argument to be unpersuasive, as the complaint specifically raises the constitutional claim, the trial testimony spoke to issues relevant to the establishment of such a claim, and the magistrate made specific findings of fact and conclusions of law concerning section 17. We thus consider this state constitutional issue on appeal.

In dispensing with the state constitutional claim, the magistrate reached the narrow legal conclusion that no "intentional taking" had taken place. Although the magistrate may have intended to convey the impression that no "intentional *damage*" had taken place as well, such an interpretation of its order is speculative.

That being so, we conclude that the magistrate failed to address whether compensable damages were sustained by Palacios within the scope of section 17. However, we have no need to remand for further findings because we conclude, as a matter of law, that Palacios cannot prevail pursuant to its constitutional or contractual claim under the facts already established by the trial court.

### B.

The same standard of review applies to a magistrate's findings of fact and conclusions of law as to the actions of a district court. *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir.1987). Accordingly, we respect the trial court's factual

---

**6.** Palacios claims that it permanently lost the use of 1,100 square feet of building space and that the fair market value of its estimated $97,-000 structure was reduced by one-half. Extensive repairs were made to the walls, roof, and electrical and plumbing systems.

**7.** Finding of fact number 4 states,
   The Navigation District did not intentionally perform any action which resulted in a taking of Plaintiff's property for public use.
   Conclusion number 5 states,
   Plaintiff is barred from recovery against the Navigation District under Article I, Section 17, Texas Constitution, as there was no intentional taking of Plaintiff's property by the Navigation District for a public use.

**8.** In bench trials, motions for a directed verdict are properly considered as motions for involuntary dismissal under rule 41(b), which permits dismissal only if the facts and law establish that the non-movant is entitled to no relief. *See James v. DuBreuil*, 500 F.2d 155, 156 n. 2 (5th Cir.1974).

**9.** If the state enters into a contract, it consents, like any citizen, to be sued if it breaches the agreement. *Fristoe v. Blum*, 92 Tex. 76, 45 S.W. 998, 999 (1898). *See also State v. City Nat'l Bank*, 578 S.W.2d 155, 159 (Tex.Civ.App.—Tyler 1979) ("the State is bound by its contract as a private citizen is bound by a like contract"), *aff'd*, 603 S.W.2d 764 (Tex.1980).

findings unless clearly erroneous. Fed.R. Civ.P. 52(a). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). However, the magistrate's legal conclusions are subject to *de novo* review. *See Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159 (5th Cir.1986).

This case involves the application of state substantive law and, in particular, the proper construction of section 17. We thus look to the Texas courts for guidance. *See First S. Fed. Sav. & Loan Ass'n v. First S. Sav. & Loan Ass'n,* 614 F.2d 71, 73 (5th Cir.1980) (irrespective of basis of federal jurisdiction, state law applies in areas of exclusively state competence). However, the question of whether certain claims have been litigated sufficiently at trial is procedural in nature and hence subject to federal procedural law.

## III.

Section 17 confers upon property owners greater rights of recovery against the government than its federal fifth amendment counterpart. The state provision provides that "[n]o person's property shall be *taken, damaged* or *destroyed* for or applied to public use without adequate compensation being made, unless by consent of such person...." (Emphasis added.)[10]

The use of the disjunctive phrase "taken, damaged or destroyed" was incorporated into the constitution in 1876 as a substitute for the narrower provision that only state-sponsored appropriation of private property

was compensable.[11] *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 737 (1941). Thus, Texas and its political subdivisions have plenary authority to take, damage, or destroy private property for a public use, 146 S.W.2d at 736, but that power is inextricably tied to an obligation on the part of the government to provide adequate compensation to those who involuntarily yield vested property rights to the larger community. The constitutional provision "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Steele v. City of Houston,* 603 S.W.2d 786, 789 (Tex.1980) (citing *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)).

Palacios correctly argues that there need not be a physical invasion of its property to demonstrate a compensable "damaging" thereof. *See DuPuy v. City of Waco,* 396 S.W.2d 103, 108 (Tex.1965). We note, however, that not every damaging of private property merits compensation under Texas law. At some point the relationship between the destructive governmental activity and the resultant harm becomes too tenuous to hold the government at risk for the infinite consequences of its day-to-day activities. For example, the construction of a viaduct designed to improve city traffic but that permanently blocks reasonable access to one business is compensable under section 17. *See id.* at 110. However, where that same viaduct impairs only one of two available entrances to a neighboring business, the damage is not severe enough to require compensation. *See Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111 (Tex.1965).

Section 17 specifies that compensation is limited to damages for a "public use." "Except in isolated instances, judicial decisions have narrowed the meaning of 'public

---

**10.** *Cf.* U.S. Const. amend V: "... nor shall private property be taken for public use, without just compensation."

**11.** Article I, § 14 of the Texas constitution of 1845 was the precursor to § 17. The former version provided, "No bill of attainder, ex post facto law, retroactive law, or any law impairing

the obligation of contracts, shall be made; and no person's property shall be taken, or applied to public use, without adequate compensation being made, unless by the consent of such person." *Cited in Journals of the Convention, State of Texas: 1845,* at 340 (rev. ed. 1974).

use' to those situations in which the damages are incident to the construction and operation of a public work."[12] The Section also confers upon property owners compensation for certain excesses of the police power.[13]

Palacios asserts that the elements necessary to establish a compensable damage claim against the District are outlined in *DuPuy* and include

1. Some type of construction for a public purpose,
2. which necessarily causes property loss,
3. not common to the general public, and
4. undertaken without consent or compensation.

*See* 396 S.W.2d at 107. But the District reminds us that section 17 applies only to *intentional*, not *negligent*, damage. *See Hale*, 146 S.W.2d at 737; *Steele*, 603 S.W.2d at 790–91. The rationale of this judicial limitation is that negligent acts by governmental agents confer no benefit upon the public. *See Hale*, 146 S.W.2d at 737.

For purposes of this appeal, Palacios is careful not to allege negligence on the part of the District, as this would bar its constitutional claim. It also cannot in good faith suggest that the District "intentionally" sought to damage its building. Instead, Palacios argues that the element of "intent" needed to prevail is defined in *Hale*, requiring only that the District had the intent to *perform the restoration project* that proximately caused the damage. We conclude that Palacios correctly applies *Hale* for purposes of defining intent.

■ Nevertheless, we reject the proposition that Palacios is entitled to compensation because, for the reasons discussed below, we do not believe that section 17 encompasses the situation that is presented here. We accept Palacios's claims that the District damaged its property, that it did not enjoy an enhancement in value, and

that the District "intended," under *Hale*, the damage that resulted. However, to hold for Palacios here would be to subject the state to constitutional claims for substandard repairs undertaken in its role as lessor. No Texas authority has been cited to us that would warrant such a result, and it is more properly the province of Texas courts to announce such bold developments in its constitutional law. We respectfully decline Palacios's invitation to rewrite the obligations of Texas and its political subdivisions under section 17.

Although it is overlooked by both parties, we find the District's role as lessor to be significant. The restoration project is arguably not a "public work" with respect to lessees of the waterfront property. The installation of the new bulkhead is in the nature of an activity compelled by express or implied covenants, the breach of which offers an aggrieved party a separate body of remedies.

Moreover, the plaintiff's position in this litigation would lead, we believe, to untenable consequences that would put Palacios's own long-term self-interest at risk. Specifically, section 17 becomes operative on the basis of affirmative governmental activity that proximately damages or destroys private property. Idleness on the part of government does not give rise to compensable claims. Curiously, Palacios suggests that the District is liable here for "intentionally" restoring the bulkhead; however, had the District stood idle and allowed Palacios to sink to the bottom of the basin, a section 17 claim would not have been available. We conclude that Texas courts would not endorse such an ironic outcome, by virtue of which the sovereign, in order to reduce its liability exposure, would be tempted to commit waste.

We are also persuaded by the fact that Palacios's owners lobbied the District to undertake this project. When severe damage to the structure of the building became apparent during the initial stages of instal-

---

**12.** *See, e.g., Abbott v. City of Kaufman*, 717 S.W.2d 927, 932 (Tex.App.—Tyler 1986, writ dism'd) (continuous flooding of plaintiffs' property by city sewage treatment plant is compensable).

**13.** *See Steele* (homeowners have cause of action against city when police, attempting to recapture three escaped convicts hiding in their home, burned the home with an incendiary device).

lation, the owners complained to the District's commissioners. The District then offered to stop all operations adjacent to Palacios's business, but the owners declined this invitation, realizing that restoration was desperately needed to save the property.

Constitutional claims under section 17 are barred if an aggrieved party consents to the damage. Accordingly, Palacios places great emphasis upon the fact that no written consent was produced at trial. We find the lack of written consent to be significant, but not determinative, in this action. We do not interpret Texas law as requiring written consent to protect the state from constitutional claims, although this case epitomizes the need for greater care on the part of the District. The actions of the aggrieved party may be sufficient, as here, to estop subsequent challenges.

In this case, Palacios lobbied for the restoration project and then declined the District's offer to stop construction when damage first appeared. Accordingly, we find that the plaintiff consented to the governmental activity that proximately caused injury. That being so, its claim under section 17 is barred outright.[14]

### IV.

With respect to the remaining causes of action, the magistrate found that Palacios based its action upon nonrecoverable property damage, barred under the Texas Tort Claims Act. *See* Tex.Civ.Prac. & Rem. Code Ann. ch. 101 (Vernon 1986 & Supp. 1989). On appeal, Palacios asserts that the magistrate committed reversible error when it concluded that sovereign immunity barred all further proceedings. It suggests that it litigated a contract as well as a negligence action that successfully pierced the District's immunity.

Palacios is correct when it argues that sovereign immunity may be waived if a state contracts with private parties; a government entity empowered to contract consents, like any citizen, to be sued if it breaches the agreement.[15] However, Palacios must still establish a *prima facie* case of breach-of-contract in the trial court in order to preserve the issue for appeal. The plaintiff's sovereign immunity analysis, although correctly stated, overlooks the fact that a breach of contract claim was not before the trial court. Palacios chose to litigate on narrower negligence issues, barred under the Texas Tort Claims Act.

The amended complaint does not cite any provisions of the lease agreement relevant to this action, nor does it allege that any express or implied covenant has been breached. Instead, the complaint offers one very sterile reference to the alleged contract—to the effect that the "Plaintiff would show that it is a Lessee of the Navigation District." No mention is made of a broken promise, and no contractual damages are pled. Additionally, there is nothing in the pleadings or record from which to conclude that the magistrate erred in holding that this case fails to raise a contractual issue.

A breach-of-contract claim not sufficiently pled and litigated before the trial court cannot serve as a proper basis for appeal.[16] Moreover, the magistrate properly applied sovereign immunity to the negligence claims. Accordingly, a judgment in favor of the defendants was in order as to all remaining issues.

AFFIRMED.

---

**14.** Palacios suggests in hindsight that the District could have restored the bulkhead without damaging adjacent property if it had approved a more expensive alternative for installation. We find such judicial second-guessing to be entirely speculative. Accordingly, we decline to address what obligations, if any, section 17 imposes upon the state to minimize damage to private property.

**15.** *See supra* note 9.

**16.** *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (As a general rule, "a federal appellate court does not consider an issue not passed upon below."); *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941) (same).