# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===

## NO. 03-04-00074-CV

===

**Dr. Joseph Smith, Appellant**

**v.**

**Ms. Sharon Lutz, in her official capacity; Mr. Don Lahey, in his official capacity; The University of Texas at Austin and Mr./Ms. John Doe, Appellees**

===

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. GN204289, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

===

## O P I N I O N

Appellant, Dr. Joseph Smith, asks this Court to resurrect the "waiver by conduct" exception to sovereign immunity for contracts executed before August 30, 1999. Because waiver by conduct has been effectively rejected by the supreme court even in those circumstances, we affirm the trial court's grant of the plea to the jurisdiction.

## BACKGROUND

In March 1999, Smith entered into a contract with the University of Texas (the University)[1] to design and implement a computer database and interface system to be used by the

---

[1] Sharon Lutz, director of the business school's career center, Don Lahey, another contractor for the University who allegedly conspired with Lutz to interfere with Smith's contract and

business school's career center to assist students, staff, and employers to communicate and network.[2] In June 2000, Sharon Lutz, Smith's main contact at the University, allegedly represented to him that the University desired to adopt his computer system university wide and would pay for any associated programming costs. After Smith hired additional programmers and incurred substantial additional expenses, the University refused to pay Smith for a portion of his extra costs. In response, Smith discontinued development of the university-wide system. Meanwhile, the University ceased paying Smith's invoices for the initial work covered by the contract. Even though it terminated Smith's contract, the University continued to use Smith's "Career Launch" system.

The contract provided that Smith remain the owner of the intellectual property created in developing the Career Launch software. The agreement also provided that to protect Smith's intellectual property, only persons pre-approved by the career center and Smith would be allowed to access his source code. The University allegedly breached this agreement by allowing persons other than those approved by Smith to review the computer program and by not returning the software to him upon his request. The program contained an anti-hacker mechanism that would disable the software if an unauthorized person attempted to access it.

---

misappropriate his trade secrets, and "Mr./Ms. John Doe" are also appellees. For simplicity, all appellees will be referred to collectively as "the University," unless their interests diverge.

[2] We determine the trial court's jurisdiction from the good-faith factual allegations made in Smith's pleadings. *See Brannon v. Pacific Employers Ins. Co.*, 224 S.W.2d 466, 469 (Tex. 1949); *Texas Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 147 (Tex. App.—Austin 1998, no pet.). Therefore, our recitation of the facts comes from Smith's second amended petition.

At some point in the dispute, the software was allegedly disabled, and the University paid another computer specialist, Don Lahey, $150,000 to remedy the problem rather than seek help from Smith. The Austin Police Department received an anonymous tip that Smith was the hacker who had disabled the system. The police raided his offices and seized his equipment for a period of time, preventing him from completing other contracts. The University refused Smith access to his source code, again preventing him from meeting his other contractual obligations.

Smith sued the University for fraud, breach of contract, constitutional takings, misappropriation of trade secrets, and copyright infringement. The University filed a plea to the jurisdiction, asserting that sovereign immunity protected it from suit. The court granted the plea.[3] Smith appeals the grant of the plea on three of his claims: breach of contract, declaratory judgment, and takings.

## DISCUSSION

### *Standard of review*

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional

---

[3] Smith's claims against appellees Mr./Ms. John Doe and Lahey and Lutz in their individual capacities remain before the trial court; this is an interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2004).

defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Id.* Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Caldwell*, 23 S.W.3d at 135.

In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," looking to the pleader's intent and accepting the factual allegations as true. *Caldwell*, 23 S.W.3d at 135. "The truth of the plaintiff's allegations is at issue only if the defendant pleads and proves that the allegations were fraudulently made to confer jurisdiction on the court." *Id.* Further, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Texas Parks & Wildlife Dep't v. Miranda*, 47 Tex. Sup. Ct. J. 386, 390, 2004 Tex. LEXIS 304 (Apr. 2, 2004); *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638-39 (Tex. 1999).

***Waiver by conduct***

Smith urges this Court to reconsider whether the sovereign-immunity doctrine in contract claims contains an exception when the State has waived immunity from suit by its conduct. Normally, the State can waive immunity from suit only by statute or legislative resolution. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002). This is because the supreme court has recognized that "it is the Legislature's sole province to waive or

4

abrogate sovereign immunity." *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997), *quoted in IT-Davy*, 74 S.W.3d at 853. When the State contracts with a private party, it waives immunity from *liability* but does not waive its immunity from *suit*. *General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 594 (Tex. 2001).

Smith concedes that as Texas law now stands, absent a legislative resolution authorizing suit against the State, the sole remedy of a private party seeking to resolve a breach-of-contract claim against the State is an administrative remedy under chapter 2260 of the government code, and therefore no waiver-by-conduct exception exists. *See* Tex. Gov't Code Ann. §§ 2260.002, .005 (West Supp. 2004); *Little-Tex*, 39 S.W.3d at 597. However, the legislature has amended chapter 2260 to specify that such administrative process does not apply to contracts such as this one "executed or awarded on or before August 30, 1999." *See* Tex. Gov't Code Ann. § 2260.002. This amendment, according to Smith, reinstates the case law effective before the administrative process was enacted and thus allows his suit to proceed. *See, e.g.*, *Travis County v. Pelzel & Assocs., Inc.*, 30 S.W.3d 662 (Tex. App.—Austin 2000), *rev'd*, 77 S.W.3d 246 (Tex. 2002); *DalMac Constr. Co., Inc. v. Texas A & M Univ.*, 35 S.W.3d 654 (Tex. App.—Austin 1999), *rev'd*, 39 S.W.3d 591 (Tex. 2001); *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 998 S.W.2d 898 (Tex. App.—Austin 1999), *rev'd*, 74 S.W.3d 849 (Tex. 2002); *Aer-Aerotron, Inc. v. Texas Dep't of Transp.*, 997 S.W.2d 687 (Tex. App.—Austin 1999), *rev'd*, 39 S.W.3d 220 (Tex. 2001); *Little-Tex Insulation Co. v. General Servs. Comm'n*, 997 S.W.2d 358 (Tex. App.—Austin 1999), *rev'd*, 39 S.W.3d 591 (Tex. 2001); *see also Alamo Cmty. Coll. Dist. v. Obayashi Corp.*, 980 S.W.2d 745 (Tex. App.—San Antonio 1998, pet. denied); *Texas S. Univ. v. Araserve Campus Dining Servs., Inc.*, 981 S.W.2d 929

(Tex. App.—Houston [1st Dist.] 1998, pet. denied). Although the supreme court reversed each of this Court's opinions, Smith cites the reversal in *IT-Davy* as support for resurrecting the waiver-by-conduct exception in contracts executed before August 30, 1999.

*IT-Davy* did raise the waiver-by-conduct question when chapter 2260 does not apply but answered it contrary to Smith's position. The facts of *IT-Davy* are similar to the facts in this case. In that case, a general contractor sued a state agency (the Texas Natural Resource Conservation Commission) for claims arising from the agency's alleged breach of contract. As here, that contract had been executed before August 30, 1999. The contractor argued that it had fully performed under the contract, that the State had accepted the benefits of its performance, and that the State had not fully paid for the additional expenses and lost profits incurred by IT-Davy due to materially different site conditions. The supreme court held in *IT-Davy* that by accepting the contractor's full performance while refusing to pay the contract price, the State had not waived sovereign immunity by its conduct. *IT-Davy*, 74 S.W.3d at 857. The plurality opinion of four justices held that a waiver-by-conduct exception does not exist:

> IT-Davy . . . relies on the *Federal Sign* footnote to ask this Court to fashion a waiver-by-conduct exception to the sovereign-immunity rule. We decline to do so. . . . Creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies.

*Id.* at 857.[4]

---

[4] Ironically, the author of this plurality opinion was Justice James Baker, who had hinted at the possibility of a waiver-by-conduct exception in a much-cited footnote in *Federal Sign*:

Smith relies on the concurring opinion in which four different justices joined in the *IT-Davy* judgment but refused to shut the door completely on a waiver-by-conduct exception. Justice Hecht noted that the plurality's "about-face" abandonment of the possibility of waiver by conduct might sweep too broadly: "We need not here decide the issue for all time, any more than we needed to in *Federal Sign*." *Id.* at 861 (Hecht, J., concurring).[5] Justice Hecht concluded that IT-Davy presented "nothing more than an ordinary contract dispute" and held that its suit was barred by sovereign immunity. *Id.* at 861-62. Like the dispute before us today, IT-Davy lacked the benefit of chapter 2260's administrative remedies.[6] Nevertheless, eight justices concluded that the State was immune from suit for a breach-of-contract claim absent legislative consent. Justice Enoch, the sole

> We hasten to observe that neither this case nor the ones on which it relies should be read too broadly. We do not attempt to decide this issue in any other circumstances other than the one before us today. There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts.

*Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 n.1 (Tex. 1997).

[5] Justice Hecht acknowledged conduct that might serve as an exception, such as the long-recognized example of when the State waives immunity by filing suit or, perhaps, when the State has debt obligations such as bonds.

[6] The *IT-Davy* concurrence notes that a dispute such as this not covered by the administrative procedures in chapter 2260 may, alternatively, be presented to the legislature with a petition for permission to sue the State. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 862 (Tex. 2002) (Hecht, J., concurring); *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 107.001-.005 (West 1997). Such procedure "merely delays resolution of claims," because "recourse to the Legislature is unavoidable," as the State is not required to pay judgments rendered without approval of the legislature. *IT-Davy*, 74 S.W.3d at 862.

dissenter in *IT-Davy*, chastised the concurring opinion for offering "false hope" to litigants who contract with the State—"hope that there remains another key—a magic key that will loosen sovereign immunity's lock and open the courthouse doors"—without identifying what that conduct might be. *Id.* at 863 (Enoch, J., dissenting).

Smith's circumstances cannot be distinguished from IT-Davy's, and he is no closer to finding the "magic key." Since *IT-Davy*, this Court has only recognized a waiver of immunity in contract cases when the State has first sued the contracting party. *See State v. Fidelity & Deposit Co. of Maryland*, 127 S.W.3d 339, 343-44 (Tex. App.—Austin 2004, pet. filed) (citing *IT-Davy*, 74 S.W.3d at 861 ("As one example, it has long been held that the State can waive immunity by filing suit.") (Hecht, J., concurring)); *see also Reata Constr. Corp. v. City of Dallas*, 47 Tex. Sup. Ct. J. 408, 409, 2004 Tex. LEXIS 303, *6-8 (Apr. 2, 2004) (per curiam); *Kinnear v. Texas Comm'n on Human Rights* ex rel. *Hale*, 14 S.W.3d 299, 300 (Tex. 2000). We await further guidance from the supreme court on what additional conduct might be sufficiently egregious to waive the State's immunity from suit.[7] We overrule Smith's first issue.

---

[7] In *Catalina Development, Inc. v. County of El Paso*, eight justices agreed that the particular facts did not amount to waiver by conduct. 121 S.W.3d 704, 707 (Tex. 2003) (county accepted land buyer's bid and earnest money, prepared transfer documents and sent them to buyer, but rescinded contract when makeup of commissioners court changed). By analyzing the particular facts, the majority left open the possibility that some conduct some time might waive sovereign immunity. *See id.* at 706-07. Justice Enoch again chastised the majority for refusing to waive immunity from suit in all contract claims and for "mislead[ing]" the public by suggesting that there could be some conduct that would waive immunity, without identifying what it might be. *Id.* at 707 (Enoch, J., dissenting).

*Declaratory judgment*

Smith's second issue asserts that even without jurisdiction to hear this contract dispute, the trial court had jurisdiction over his declaratory-judgment claim. The State counters that Smith's declaratory-judgment claim is merely an attempt to confer jurisdiction on the trial court to decide the breach-of-contract claim and is therefore barred. *See IT-Davy*, 74 S.W.3d at 859-60. Smith specifically asked the trial court to declare not only his rights under the contract, but also that the State had violated his intellectual-property rights by refusing to return his software, by refusing to give him access to it, and by allowing unauthorized persons to access it. In this respect, he sought injunctive relief to obtain the return of his intellectual property.

The Uniform Declaratory Judgment Act (UDJA) is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 1997). The Act provides:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

*Id.* § 37.004(a) (West 1997).

Although he alleges that the University is acting unlawfully by denying him access to and possession of his software, Smith cites no statutes that such action specifically violated.[8] He

---

[8] Smith's live pleadings do assert a cause of action for copyright infringement under federal law, *see* 17 U.S.C.A. §§ 501 *et seq.* (West 1996 & Supp. 2003). However, Smith has not appealed the district court's grant of the University's plea on this claim.

9

asserts merely that the University has breached its contract with him. Normally, a party may seek declaratory relief when its rights under a contract are uncertain or threatened, provided there is a justiciable controversy. *See, e.g.*, *Paulsen v. Texas Equal Access to Justice Found.*, 23 S.W.3d 42, 46 (Tex. App.—Austin 1999, pet. dism'd) (contract may be construed before or after breach, provided litigation between parties is imminent if contractual uncertainties are not judicially resolved); *see also Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (declaratory judgment appropriate only if justiciable controversy exists) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). However, declaratory-judgment actions based on a governmental unit's breach of contract have routinely been disallowed by the supreme court, as they are suits against the State, and the State has immunity from suit unless expressly waived. *See IT-Davy*, 74 S.W.3d at 853.

The supreme court has outlined two distinct types of declaratory-judgment suits against the State. The first is a suit that is brought against state officers who allegedly act without legal or statutory authority and that seeks to compel the officers to act within their official capacity; these are not considered suits against the State and therefore do not implicate sovereign immunity. *See IT-Davy*, 74 S.W.3d at 855; *W.D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 840 (Tex. 1958); *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945). On the other hand, declaratory-judgment actions brought against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities *are* considered suits against the state because they seek to control state action or impose liability on the state. This second category of declaratory actions may not be maintained without legislative permission. *See IT-Davy*, 74

10

S.W.3d at 855-56; *Federal Sign*, 951 S.W.2d at 404; *Griffin v. Hawn*, 341 S.W.2d 151, 152 (Tex. 1960); *Dodgen*, 308 S.W.2d at 840.

We conclude that Smith's declaratory-judgment claim fits into the second category—one seeking to establish a contract's validity or enforce performance under a contract. Smith's ownership of the software was outlined in an addendum to the contract. Also, the contract and license agreement contained the specific details regarding access and ownership rights in the software. When the State acts within a color of right to withhold property in a contractual situation, for instance by believing that its actions are justified due to disagreements over payment due or performance under the contract, we have held that it does not have the requisite intent to take property for public use. *Green Int'l, Inc. v. State*, 877 S.W.2d 428, 434 (Tex. App.—Austin 1994, writ dism'd by agr.). Similarly, we conclude that when the State acts under a color of right to withhold property acquired by it under a contract, a suit seeking declaratory relief concerning the ownership, possession, or access to that property is a suit based in contract, for which legislative consent must be obtained.

We conclude that Smith is improperly attempting to circumvent the State's sovereign immunity from suit by characterizing his contract dispute as a declaratory-judgment claim. *See IT-Davy*, 74 S.W.3d at 859. This is not permitted. *See id.*; *Federal Sign*, 951 S.W.2d at 405.[9] We overrule Smith's second issue.

---

[9] The supreme court has also held that even if a plaintiff's suit involves claims for which it does not need legislative permission to sue the State, such as claims that the State has violated state statutes, as long as the suit also seeks monetary damages for breach of contract, the suit is barred by sovereign immunity absent a waiver. *See Federal Sign*, 951 S.W.2d at 404-05.

11

*Takings*

In his final issue, Smith argues that the trial court erred in dismissing his constitutional takings claim. *See* Tex. Const. art. I, § 17 ("No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980); *State v. Biggar*, 848 S.W.2d 291, 295 (Tex. App.—Austin 1993), *aff'd*, 873 S.W.2d 11 (Tex. 1994). Smith correctly asserts that sovereign immunity does not bar a claim for a constitutional taking.

Whether particular facts constitute a taking is a question of law. *See Mayhew*, 964 S.W.2d at 936. The supreme court has outlined a three-part test to identify a constitutional taking: (1) the State intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *Little-Tex*, 39 S.W.3d at 598; *Steele*, 603 S.W.2d at 788-92. To meet the first prong, the State must have the requisite intent to be acting under its eminent domain powers, rather than merely withholding property or money in a contract dispute. *Little-Tex*, 39 S.W.3d at 598-99; *Green Int'l*, 877 S.W.2d at 434. "The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers." *Little-Tex*, 39 S.W.3d at 599; *see Green Int'l*, 877 S.W.2d at 434. The *Little-Tex* court concluded that because that dispute was a disagreement about the contractor's right to additional payments under the contract, the State was merely acting under its colorable contractual rights, not taking the contractor's property under eminent domain. *Little-Tex*, 39 S.W.3d at 599.

Similarly, here the University obtained possession of the software by virtue of the contract with Smith. When a dispute arose over Smith's performance and the University's payments, the University refused Smith access to or possession of the software. By doing so, the University was acting under color of its contractual rights; it did not have the requisite intent to take Smith's property by eminent domain. *See id.*; *Green Int'l*, 877 S.W.2d at 434.

Additionally, Smith voluntarily entered into the contract with the University and created and delivered his software pursuant to the contract. When a party consents to the government's possession of its property, there can be no constitutional taking. *Green Int'l*, 877 S.W.2d at 435; *State v. Steck*, 236 S.W.2d 866, 869 (Tex. Civ. App.—Austin 1951, writ ref'd), *cited with approval by Little-Tex*, 39 S.W.3d at 599; *see also Palacios Seafood, Inc. v. Piling, Inc.*, 888 F.2d 1509, 1515 (5th Cir. 1989). We hold that the district court properly granted the University's plea to the jurisdiction on the takings claim. We overrule Smith's third issue.

## CONCLUSION

The waiver-by-conduct exception once recognized by this Court in *Pelzel*, *DalMac*, *Aer-Aerotron*, *IT-Davy*, and *Little-Tex* but rejected by the supreme court is not resurrected for those contracts that pre-date the effective date of the administrative remedies created in chapter 2260. *IT-Davy* refutes any such suggestion. If the supreme court intends to recognize certain conduct as waiving immunity, we await its lead in identifying what that conduct might be. Under the existing state of the law, the University did not waive its sovereign immunity from suit on the contract by its conduct here nor did it have the requisite intent to take Smith's property under its eminent-domain

13

powers. Smith's declaratory-judgment claim is also barred by sovereign immunity because it cannot stand apart from the contract suit. The district court properly granted the University's plea to the jurisdiction, and we affirm its order of dismissal.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   June 10, 2004