**W.W. WEBBER, L.L.C., Appellant,**

v.

**HARRIS COUNTY TOLL ROAD AUTHORITY, Appellee.**

No. 14–09–00513–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 14, 2010.

William M. Coats, Patricia M. Rosendahl, Houston, for appellant.

Michael R. Hull, Houston, for appellee.

Panel consists of Justices BROWN, SULLIVAN, and CHRISTOPHER.

## OPINION

KENT C. SULLIVAN, Justice.

The trial court dismissed, for want of jurisdiction, a lawsuit filed by appellant, W.W. Webber, L.L.C. ("Webber"), against a governmental entity, appellee Harris County Toll Road Authority ("HCTRA"), for breach of contract and *quantum meruit.* On appeal, Webber contends HCTRA waived its governmental immunity by conduct. Because the Texas Supreme Court has already rejected waiver by conduct under similar facts, we affirm.

## I.

### BACKGROUND

This lawsuit arises from a contract dispute relative to the construction of two sections of the Westpark Tollway, a limited-access toll road serving portions of western Harris County and northeastern Fort Bend County. Construction on the tollway began in 2001.

That year, HCTRA, on behalf of Harris County, solicited and accepted bids for the construction of certain portions of the tollway. Two of the bids HCTRA accepted were submitted by Webber, a construction

contractor that agreed to build two sections of the tollway, covering a total of roughly 1.17 miles of road. Accordingly, Webber and HCTRA entered into two contracts, each addressing a different section of the tollway.

At the time, HCTRA intended to open the tollway no more than two years later, in May 2003. Therefore, the parties agreed to a strict deadline for completion of Webber's portions of the project. Under both contracts, Webber was obligated to complete both sections within 365 calendar days, plus six holidays. Both contracts specified that "time is of the essence," and therefore authorized Webber to work for twenty-four hours a day, and seven days per week—except for the six designated holidays—to enable Webber to complete the project on time.

In addition, both contracts imposed liquidated damages of $2,500 per day should Webber fail to complete the project within the time allotted. Those clauses generally provided:

> Time is of the essence of this Contract. If the Contractor fails to complete his undertaking acceptably to the Authority within the time specified in his bid and Contract, the Authority will be damaged. The exact amount of damage is and will be difficult of exact ascertainment. Such damages shall be at the rate or the amount hereinafter fixed. The Contractor specifically binds and obligates himself to pay such damages to the Authority on demand; or, at its option, the Authority may withhold the amount thereof from any sums due the Contractor under this or any other Contract, or from any other obligation of any kind owing the Contractor by the Authority.

As of the date of the contracts, Harris County had not fully secured all necessary rights of way from the surrounding landowners, and also had not reached agreement to relocate all utilities that might stand in the way of construction. While those events were expected to delay construction to some extent, Webber was strongly urged, in light of the strict deadline, to anticipate and work around these expected delays to complete the projects on time.

Webber did not complete either construction project within the deadline imposed by the contracts. Therefore, HCTRA invoked the liquidated-damages provisions and withheld a portion of the original contract price. Ultimately, HCTRA paid slightly more than ninety-seven percent of the original contract price to Webber.

However, Webber—which attributed its untimely performance to HCTRA's delay in securing the rights of way and relocation of utilities—demanded full payment of the contract amount. After Harris County failed or refused to accede to Webber's demands, Webber filed suit for breach of contract and *quantum meruit*. HCTRA, as a governmental entity, asserted immunity in a plea to the jurisdiction, and also filed a motion for summary judgment. The trial court sustained HCTRA's plea and granted summary judgment, prompting this appeal.

## II.

### ANALYSIS

Webber raises seven issues on appeal. The first five issues are devoted to the portion of the trial court's order that dismissed Webber's suit for want of jurisdiction. We will address each of those issues, albeit not in the same order in which they appear in appellant's brief.

We conclude that Webber has failed to demonstrate the trial court's subject-matter jurisdiction to hear this case. There-

fore, we hold the trial court properly dismissed Webber's lawsuit for want of jurisdiction. Accordingly, we need not reach appellant's sixth and seventh issues, in which Webber complains about the propriety of the trial court's order granting summary judgment to HCTRA. *See* Tex.R.App. P. 47.1.

### A. Completion of Jurisdictional Discovery

In its fourth issue, which we address first, Webber argues that the trial court should have deferred any ruling on HCTRA's jurisdictional plea until after the depositions of five Harris County employees. In response, HCTRA contends (1) Webber waived this complaint by failing to file a supporting affidavit or verified motion for continuance; and (2) Webber did not diligently pursue these depositions, which were not requested until (a) more than a year after suit was filed, (b) more than four months after HCTRA filed its plea, and (c) more than two weeks after the trial court's hearing on the plea.

We review the denial of a motion for continuance[1] for an abuse of the trial court's discretion. *See Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 161 (Tex.2004); *Daugherty v. Jacobs,* 187 S.W.3d 607, 618 (Tex.App.-Houston [14th Dist.] 2006, no pet.). In this context, a trial court abuses its discretion only if its ruling was arbitrary, unreasonable, and lacking in reference to any guiding rules or principles. *See Daugherty,* 187 S.W.3d at 618.

A motion for continuance is governed by Texas Rule of Civil Procedure 251 and, to the extent the request is prompted by a perceived need to obtain testimony, Rule 252. *See* Tex.R. Civ. P. 251, 252. Both of these rules generally require the moving party, here, Webber, to supply either an affidavit or a verified motion reasonably explaining the need for a continuance.[2] *See id.; Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 647 (Tex.1996). If the movant fails to comply with that requirement, we must presume the trial court did not abuse its discretion by denying the requested continuance. *See Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986); *Waste Water, Inc. v. Alpha Finishing & Developing Corp.,* 874 S.W.2d 940, 942 (Tex.App.-Houston [14th Dist.] 1994, no writ).

Here, Webber failed to comply with Rules 251 and 252 because its continuance request was not verified or supported by an affidavit explaining the need for a continuance. *See* Tex.R. Civ. P. 251, 252; *Tenneco,* 925 S.W.2d at 647. Therefore, we cannot say the trial court abused its discretion by denying Webber's request. *See Daugherty,* 187 S.W.3d at 618. Accordingly, we overrule appellant's fourth issue.

### B. Plea to the Jurisdiction

In its first issue, Webber contends the trial court erred by dismissing its lawsuit pursuant to HCTRA's claim of governmental immunity.[3] Specifically, Webber ar-

---

1. The record does not indicate that Webber expressly presented its continuance request—which was contained within a pleading actually *opposing* HCTRA's motion for continuance of the trial setting—to the trial court. *See* Tex.R.App. P. 33.1(a). However, we will assume, without deciding, that the trial court, by granting HCTRA's plea, implicitly denied Webber's request for a deferral of that ruling. *See* Tex.R.App. P. 33.1(a)(2)(A); *In re A.D.A.,*

287 S.W.3d 382, 387 (Tex.App.-Texarkana 2009, no pet.).

2. Rule 251 also contemplates a continuance "by consent of the parties," *see* Tex.R. Civ. P. 251, but the parties do not contend that provision applies here.

3. In this opinion, we will use the term "governmental immunity," which extends to political subdivisions of the State, as opposed to

gues that HCTRA waived governmental immunity through its allegedly wrongful conduct. In response, HCTRA denies the existence of any waiver-by-conduct exception, and further argues that its actions would not warrant any such exception, anyway. We will address all of these arguments, after a brief discussion of the basics of governmental immunity.

### 1. Immunity, Generally

■ The doctrine of governmental immunity protects political subdivisions of the State, including counties, from lawsuits seeking damages. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003); *MBP Corp. v. Bd. of Trs. of Galveston Wharves*, 297 S.W.3d 483, 487 (Tex.App.-Houston [14th Dist.] 2009, no pet.). Stated differently, governmental entities are usually immune from both liability and suit. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex.2006).

■ The protections afforded by governmental immunity are not absolute, however. For example, immunity from *liability*—but not immunity from *suit*—may be waived when a governmental entity voluntarily enters into a contract. *See id.* Immunity from suit, by contrast, cannot be waived except by the Legislature. *See id.* The Legislature may consent to either a specific lawsuit, through the issuance of a legislative resolution,[4] or a class of lawsuits, through clear and unambiguous statutory language. *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 215 (Tex. App.-Houston [14th Dist.] 2008, no pet.); see also, e.g., Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–.109 (Vernon 2005 & Supp. 2009) (permitting claimants to bring certain tort claims against government).

■ Webber acknowledges that this case does not fit within either of those recognized exceptions to governmental immunity.[5] That is, Webber concedes that no statutory scheme authorizes its suit against HCTRA,[6] and it did not ask for the Legislature's express consent to sue.[7] *See Seureau*, 274 S.W.3d at 215. Instead, Webber seeks refuge in the common-law concept of "waiver by conduct," a possible exception to immunity once theorized—but never actually recognized—by the Texas Supreme Court.[8] Before we address that argument, we pause to consider the perti-

---

"sovereign immunity," which refers to the State's immunity from suit, *See Seureau .v. ExxonMobil Corp.*, 274 S.W.3d 206, 214 n. 5 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

4. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 107.001–.005 (Vernon 2005 & Supp. 2009).

5. In addition, Webber does not challenge HCTRA's status as a governmental entity ordinarily entitled to immunity. *See, e.g., Sw. Bell Tel., L.P. v. Harris County Toll Road Auth.*, 282 S.W.3d 59, 60, 70 (Tex.2009) (holding HCTRA was entitled to governmental immunity).

6. In 2003, the Legislature amended the Local Government Code to authorize suits against a county arising from construction contracts, among others. *See* Act of May 29, 2003, 78th Leg., R.S., ch. 1203, § 2, 2003 Tex. Gen. Laws 3418, 3418–19 (current version at Tex. Loc. Gov't Code Ann. § 262.007 (Vernon 2005)). However, the Legislature expressly confined the scope of that limited waiver to contracts executed after September 1, 2003. *See id.* at § 4(b), 2003 Tex. Gen. Laws at 3419. Therefore, that amendment does not apply to Webber's contracts with HCTRA, which were executed in 2001. *See id.*

7. Webber also raises a constitutional-takings claim in its brief, but it did not present that argument to the trial court in response to HCTRA's plea. Therefore, we may not consider that claim for the first time on appeal. *See* Tex.R.App. P. 33.1(a); *Seals v. City of Dallas*, 249 S.W.3d 750, 759 (Tex.App.-Dallas 2008, no pet.).

8. *See* discussion *infra* Part II.B.3.

nent standards by which we review the trial court's order.

## 2. Standard of Review

 A valid claim of governmental immunity, unless waived, deprives a trial court of subject-matter jurisdiction over a lawsuit seeking damages against a governmental entity. *See MBP Corp.,* 297 S.W.3d at 487–88. Thus, a plaintiff bears the burden of alleging facts that affirmatively demonstrate the trial court's subject-matter jurisdiction over a case. See id. at 488 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993)). A governmental entity may then challenge the court's jurisdiction, as here, by filing a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000).

 On appeal, we review the trial court's ruling on a plea to the jurisdiction *de novo.*[9] *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). We consider both the plaintiff's pleadings and the evidence submitted by the parties,[10] to the extent necessary to resolve the jurisdictional questions presented, in the light most favorable to the plaintiff, here, Webber. *See MBP Corp.,* 297 S.W.3d at 488; *Seureau,* 274 S.W.3d at 215. If the plaintiffs pleadings demonstrate incurable defects in jurisdiction, or the evidence submitted by the parties fails to raise a fact question as to jurisdiction, we must affirm. *See MBP Corp.,* 297 S.W.3d at 488; *Seureau,* 274 S.W.3d at 215.

## 3. Waiver by Conduct

Both this court and the First Court of Appeals have discussed, at length, the history of the waiver-by-conduct "exception." *See Seureau,* 274 S.W.3d at 220–21; *Tex. S. Univ. v. State St. Bank & Trust Co.,* 212 S.W.3d 893, 905–07 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). In brief, the oft-debated notion that a governmental entity theoretically could waive its own immunity, absent the Legislature's consent, first appeared in a footnote to a majority opinion from the Texas Supreme Court. There, Justice Baker, writing for the majority, suggested, "There may be ... circum-

9. In its second and third issues, Webber recites the relevant standard of review and alleges, in a conclusory fashion, that the trial court failed to follow it. However, under the *de novo* standard of review, we will affirm if the trial court reached the correct result and reverse if it did not, and its reasoning is not relevant to our de novo analysis. *See Markel Ins. Co. v. Muzyka,* 293 S.W.3d 380, 385 (Tex. App.-Fort Worth 2009, no pet.); *Johnson v. City of Fort Worth,* No. 2–08–369–CV, 2009 WL 806868, at * 1 n. 4 (Tex.App.-Fort Worth Mar. 26, 2009, no pet.) (mem. op.). Because we ultimately hold the trial court did not err by dismissing Webber's suit for want of jurisdiction, we overrule appellant's second and third issues—which do not provide a separate basis for reversal of the trial court's judgment—as moot. *See Markel,* 293 S.W.3d at 385; *Johnson,* 2009 WL 806868, at *1 n. 4.

10. In its fifth issue, Webber complains that some of the documents attached to HCTRA's plea contain inadmissible evidence and should not have been considered by the trial court. Webber does not identify the specific evidence it finds objectionable. *See* Tex. R.App. P. 38.1(i). In any event, we overrule this complaint, for two reasons. First, Webber did not obtain a ruling on its objection to these unidentified documents and does not contend that the trial court refused to rule on its objection. *See* Tex.R.App. P. 33.1(a)(2). Second, Webber attached the same exhibits to its own response to the plea to the jurisdiction and has therefore waived any complaint to the trial court's consideration of that evidence. *See McInnes v. Yamaha Motor Corp., U.S.A.,* 673 S.W.2d 185, 188 (Tex.1984) ("A party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character."). Accordingly, we overrule appellant's fifth issue.

stances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 n. 1 (Tex.1997), superseded by statute, Tex. Gov't Code Ann. §§ 2260.001–.108 (Vernon 2008), as recognized in *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 595–97 (Tex.2001).

However, in 2001, the Texas Supreme Court retreated from that language, refusing to recognize any waiver-by-conduct exception in an action against the State:

> [R]egardless of what we might have held ... in 1997, the situation has changed. After *Federal Sign*, the Legislature enacted a dispute-resolution procedure to resolve certain breach-of-contract cases against the State. Historically, we have left to the Legislature whether to waive sovereign immunity....
>
> ....
>
> [W]e conclude that there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature.... Apart from a special statute conferring consent, a party simply cannot sue the State for breach of contract absent legislative consent.
>
> ...

*Little–Tex Insulation Co.*, 39 S.W.3d at 595, 597.

Over the years, the Supreme Court has repeatedly refused to recognize a waiver-by-conduct exception, much less define the sort of conduct that might warrant its application. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex.2007); *Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705–06 (Tex.2003); *see*

*also Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 857 (Tex.2002) (plurality op.) ("Creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections—and this would defeat many of the doctrine's underlying policies.").

In the absence of such guidance from the Supreme Court, this court has likewise declined to craft some judicial exception to immunity. *See MBP Corp.*, 297 S.W.3d at 493–94; *Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 579–80 (Tex. App.-Houston [14th Dist.] 2009, pet. denied); *Seureau*, 274 S.W.3d at 220–21, 225; *Breezy v. Anatomical Bd.*, No. 14–03–01321–CV, 2005 WL 1923854, at *1 n. 2 (Tex.App.-Houston [14th Dist.] Aug. 11, 2005, no pet.) (mem. op.); *Robinson v. Univ. of Tex. Med. Branch at Galveston*, 171 S.W.3d 365, 371 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *see also Univ. of Tex. Med. Branch at Galveston v. Harrison*, No. 14–02–01276–CV, 2003 WL 21803314, at *2 n. 2 (Tex.App.-Houston [14th Dist.] Aug. 7, 2003, pet. denied) (mem. op.) ("As an intermediate appellate court, we defer to the Texas Supreme Court to decide when, if ever, and under what circumstances such a [waiver-by-conduct] contention might become sustainable.").

In 2007, the First Court of Appeals concluded that a governmental entity, Texas Southern University ("TSU"), had waived immunity through its conduct in a case featuring "extraordinary factual circumstances." *See State St.*, 212 S.W.3d at 900, 908. In State Street, unlike here, TSU—in response to a direct inquiry about the enforceability of the contract [11]—intention-

11. *See* Br. for Appellees CMS Viron Corp. & CMS Energy Res. Mgmt. Co., *Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893

(Tex.App.-Houston [1st Dist.] 2007, pet. denied) (Nos. 01 –05–00758–CV & 01 –06–00497–CV), *available at* 2005 WL 3675896, at

ally relinquished its right to immunity by assuring its contract partner, in writing, that (1) their contract could be enforced in court, and (2) TSU would actually be liable to pay any money judgment arising from its breach of that contract. See id. at 898. Under those facts, the appellate court found "waiver by conduct." See id. at 907–08; but see Seureau, 274 S.W.3d at 225 (explaining State Street, under traditional waiver principles, as an "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right") (citing Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex.2003)). However, the Texas Supreme Court denied TSU's petition for review, thereby declining to confirm or deny the existence or scope of the waiver-by-conduct exception.

### 4. Application to Facts

██ However, even if a waiver-by-conduct exception does exist, the Texas Supreme Court has foreclosed its application under these facts. That is, the Court has ruled that a governmental entity does not waive its immunity from suit simply by adjusting a contract price pursuant to a liquidated-damages clause, even if the propriety of that adjustment is disputed. See Travis County v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 252 (Tex.2002), superseded on other grounds by statute, Tex. Loc. Gov't Code Ann. § 262.007 (Vernon 2005), as noted in Tooke v. City of Mexia, 197 S.W.3d 325, 342 (Tex.2006).

In Pelzel, Travis County withheld full payment on a construction contract, pursuant to a liquidated-damages clause, because the builder—Pelzel—failed to complete the project by the agreed—upon deadline. See id. at 247. In response, Pelzel sued the county, arguing that (1) it was entitled to full payment because the parties had agreed to extend the project-completion deadline, and (2) the county waived its immunity from suit by accepting Pelzel's performance without making full payment. See id. at 247, 251.

The Texas Supreme Court disagreed with Pelzel and upheld Travis County's claim of immunity, holding:

> According to the contract's liquidated-damages clause, Travis County could retain $250 for each calendar day Pelzel failed to substantially complete the building beyond the date set for completion and acceptance. The fact is undisputed that Travis County withheld, under the liquidated-damages clause, only $5,500.00 of the total contract price of $414,164.80. When a governmental unit adjusts a contract price according to the contract's express terms, it does not, by its conduct, waive immunity from suit, *even if the propriety of that adjustment is disputed. See IT–Davy*, 74 S.W.3d at 252 [851]. Thus we conclude that Travis County did not waive immunity from suit by invoking the contract's liquidated-damages clause.

Id. at 252 (emphasis added).

The facts in Pelzel are virtually on all fours with those presented here.[12] Web-

---

*3–*4 ("Viron insisted that TSU specifically represent and warrant that ... its 'obligation under this Master Lease constitutes an enforceable obligation.' ... Additionally, Viron demanded an 'opinion of counsel' that TSU's promises were valid.").

**12.** Webber attempts to distinguish Pelzel by claiming that, in this case, there is no real dispute as to Webber's entitlement to most of the funds withheld by Harris County. In support, Webber notes that the lead engineer has placed his initials next to a figure identified as the "[a]mount due for payment." Webber interprets those initials as some sort of acknowledgement by the county that these figures are owing but remain unpaid.

However, that argument lacks merit because these sums have not been approved by the county auditor or commissioner's court.

ber voluntarily signed two contracts containing "time is of the essence" language and liquidated-damages clauses that authorized HCTRA, in the event Webber failed to meet the one-year deadline, to withhold $2,500 per day until construction was complete. There is no dispute that, in fact, Webber missed the agreed-upon deadline, triggering the liquidated-damages clauses and leading HCTRA to adjust the contract prices accordingly. Relying on *Pelzel*, we hold that HCTRA did not waive its immunity from suit by invoking the contracts' liquidated-damages clauses, notwithstanding Webber's protests about the fairness of those adjustments. *See id.*

Thus, Webber has not demonstrated the trial court's subject-matter jurisdiction to consider its suit against HCTRA. Therefore, we overrule appellant's first issue. Having done so, we affirm the trial court's dismissal of Webber's suit for lack of subject-matter jurisdiction.

## III.

### CONCLUSION

We overrule appellant's first through fifth issues and affirm the portion of the trial court's judgment granting HCTRA's plea to the jurisdiction. Having done so, we need not address the propriety of its summary-judgment order. *See* Tex. R.App. P. 47.1.

**In re L.R., B.S., and S.S.**

*See* Tex. Loc. Gov't Code Ann. §§ 113.043 (Vernon 2008) ("[T]he county treasurer and the county depository may not pay a check or warrant unless it is countersigned by the county auditor to validate it as a proper and budgeted item of expenditure."), 113.064(a) (Vernon 2008) ("A claim, bill, or account may not be allowed or paid until it has been examined and approved by the auditor."). That responsibility may not be delegated to any other officer or county employee. *See Crider v. Cox*, 960 S.W.2d 703, 706 (Tex.App.-Tyler 1997, writ denied). Instead, the approval of both the auditor and commissioner's court is a condition precedent to the payment of claims. *See id.*

In this case, the invoices contained in the appellate record have not been approved by either the auditor or commissioner's court. Accordingly, we cannot accept the premise of Webber's argument that Harris County has actually *agreed* to pay these invoices.