Melissa Goodwin, Justice
Charles J. Hughes appeals from the trial court's order granting Tom Green County's plea to the jurisdiction. Hughes sued the County for breach of contract and unjust enrichment based on an agreement Hughes and the County entered into in connection with prior litigation and for violation of the Texas Open Meetings Act. See generally Tex. Gov't Code §§ 551.001 -.146. Asserting its governmental immunity, the County filed a plea to the jurisdiction as to the claims based on the agreement. The trial court granted the plea, and Hughes filed this interlocutory appeal. See Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). For the reasons that follow, we affirm the trial court's order.
BACKGROUND
Hughes's uncle, Duwain E. Hughes, Jr., by his will, left certain mineral interests in trust for the lifetime benefit of two individuals and the remainder of the mineral interests to Southern Methodist University (SMU) for the purpose of establishing an endowed chair in the English Department. Duwain Hughes also left his home and rare book and music collections to the County, directed that his home be named as the "Duwain Hughes Branch of the Tom Green County Library," and bequeathed his residuary estate to the County for the purpose of paying off any indebtedness against the home, for upkeep of the home, *3 and for the purchase of new books. By April 1991, SMU was receiving funds in excess of the amount needed to fund the chair in English at the highest level authorized by the university-$1.5 million. The SMU Board of Trustees filed an application to release the restriction on the use of the funds, seeking authority to use the excess funds for other purposes "supporting and maintaining" the English Department (the SMU Litigation). In May 1991, the County intervened in the SMU Litigation claiming that the chair in English was fully funded, that the purpose of Duwain Hughes's bequest had been accomplished, and that the County was entitled to the excess funds as part of the residuary estate left to the County. In March 1993, Hughes intervened in the SMU Litigation alleging that because the County had sold Duwain Hughes's home, the residuary gift to the County had lapsed, and he and other heirs at law[1] were entitled to the mineral interests remaining after the English chair at SMU was fully funded.[2]
The parties agreed to mediate the case in May 1994. One or two days prior to mediation, Hughes and the County entered into a Mutual Partial Assignments agreement (MPA), which is the basis of Hughes's breach of contract claim. In the MPA, Hughes and the County agreed, in essence, to split equally the proceeds of any settlement payment from SMU.[3] As further consideration, the County also agreed to name the main library in honor of Duwain Hughes or Frances Hughes Crews "if the commissioners consider[ed] the County's ultimate recovery in the [SMU Litigation] to be substantial enough for such recognition." Hughes and the County further agreed to continue to prosecute the SMU Litigation, and the preamble provided that the agreement was "in no way intended to eliminate or reduce in any fashion the causes of action, claims or rights held by the heirs-at-law or the County."
Hughes and the County proceeded to mediation with SMU, at which the parties entered into a settlement agreement whereby SMU agreed to pay $1 million to the other parties. Subsequently, the parties executed a "Compromise and Settlement and Release of All Claims," in which the parties confirmed SMU's agreement to pay the other parties $1 million, agreed to entry of judgment declaring that SMU has a vested fee title in the mineral interests, and agreed to release the restrictions on SMU's and the County's use of the funds left to them. In the "Compromise and Settlement and Release of All Claims," the County, Hughes, and the other heirs released SMU from all of the claims they had asserted in the SMU Litigation. In July 1994, the County Commissioners ratified the parties' agreements in the SMU Litigation. In September 1994, the trial court in the SMU Litigation entered a *4 final judgment in accordance with the terms of the parties' agreement. The County subsequently deposited the settlement proceeds in the Hughes Library Fund. It appears from the record that the County began planning for a new main library, sold the Duwain Hughes home at some point, and ultimately used money from the Hughes Library Fund to purchase the building that housed the main library at the time and remodel it to serve as the new main library.[4] In 2011, when the remodeling of the library building was completed, the County Commissioners determined that the "ultimate recovery in [the SMU Litigation was] not substantial enough to name Tom Green County's main library in honor of Duwain E. Hughes, Jr." and named the library after other library supporters.
In 2013, Hughes filed suit against the County asserting claims for breach of the MPA, unjust enrichment, and violations of the Open Meetings Act.[5] See generally Tex. Gov't Code §§ 551.001 -.146. Hughes alleged that the County had breached the MPA by failing and refusing to name the library after Duwain Hughes or Frances Hughes Crews and had unjustly accepted and retained the benefits of the MPA.[6] The County filed a plea to the jurisdiction seeking dismissal of all claims pertaining to the MPA on the basis of governmental immunity. Following a hearing, the trial court granted the motion, and Hughes filed this interlocutory appeal.
APPLICABLE LAW AND STANDARD OF REVIEW
Governmental immunity protects political subdivisions, including counties, from suit and from liability. See Tex. Civ. Prac. & Rem. Code § 101.001(3)(B) (defining "governmental unit" to include counties); Ryder Integrated Logistics, Inc. v. Fayette Cty. , 453 S.W.3d 922, 926 (Tex. 2015) (per curiam); Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivs. Prop./Cas. Joint Self-Ins. Fund , 212 S.W.3d 320, 323-24 (Tex. 2006). Immunity from suit protects governmental entities from suit unless the Legislature grants consent. Ryder , 453 S.W.3d at 926 ; Ben Bolt-Palito Blanco , 212 S.W.3d at 324. Immunity from liability shields governmental units from judgments. Ben Bolt-Palito Blanco , 212 S.W.3d at 324. By entering into a contract, the governmental entity waives its immunity from liability but not its immunity from suit. Id. A governmental entity that asserts claims for affirmative relief waives its immunity from suit as to related, defensive claims, to the extent necessary to offset the governmental entity's claims.
*5 Reata Constr. Corp. v. City of Dall. , 197 S.W.3d 371, 373, 377 (Tex. 2006). For purposes of waiver of governmental immunity from suit, there is no reason to differentiate between a governmental entity as plaintiff and a governmental entity as plaintiff-intervenor. Id.
Governmental immunity defeats a court's subject matter jurisdiction in a pending case and is therefore properly asserted in a plea to the jurisdiction. Engelman Irrigation Dist. v. Shields Bros. , 514 S.W.3d 746, 750-51(Tex. 2017) (holding that sovereign immunity does not so implicate subject matter jurisdiction that it allows collateral attack on final judgment); Ryder , 453 S.W.3d at 927 ; Texas Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 225-26 (Tex. 2004). When a government entity challenges jurisdiction on the basis of immunity, "the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." Ryder , 453 S.W.3d at 927 (quoting Dallas Area Rapid Transit v. Whitley , 104 S.W.3d 540, 542 (Tex. 2003) ). Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. Houston Belt & Terminal Ry. Co. v. City of Hous. , 487 S.W.3d 154, 160 (Tex. 2016).
DISCUSSION
Hughes asserts that the County waived its immunity from suit for breach of the MPA in two ways. First, Hughes contends that the County waived immunity by voluntarily intervening in the SMU litigation, settling the suit-from which it was not immune-and then breaching the terms of the settlement agreement. Second, Hughes argues that the County waived immunity by its conduct in breaching the MPA. We address each argument in turn.
Voluntary Intervention and Settlement
In his first issue, Hughes argues that the County waived its immunity from suit for breach of the MPA because the MPA was a settlement agreement in a lawsuit for which the County had no immunity by virtue of its voluntary intervention. Hughes relies on Texas A & M University-Kingsville v. Lawson , 87 S.W.3d 518 (Tex. 2002). Under the Lawson rule, the Texas Supreme Court held that where the Legislature had waived the university's immunity in the Whistleblower Act, the university could not "claim immunity from a suit brought to enforce a settlement agreement reached to dispose of a claim brought under the Act."[7] Id. at 522-23. Applying Lawson to the facts of this case, Hughes argues that the County waived its immunity by intervening in the SMU Litigation, that he and the County settled their claims against each other in the MPA, and that the County cannot not now claim immunity from suit for breach of the MPA, in which it settled a lawsuit from which it had no immunity. On the facts before us, we do not find this argument persuasive.
First, we cannot agree that the County waived its immunity from suit by intervening in the SMU Litigation. Implicit in Hughes's argument is reliance on the voluntary litigation "exception" to immunity applied by the Texas Supreme Court in Reata. See 197 S.W.3d at 373, 377. However, while the Supreme Court in Reata applied a judicial modification to immunity, its holding was limited to claims related to and defensive to claims asserted by the *6 governmental entity. See ids="8409239" index="17" url="https://cite.case.law/sw3d/197/371/#p373">id. ; see also City of New Braunfels v. Carowest Land, Ltd. , 432 S.W.3d 501, 522 (Tex. App.-Austin 2014, no pet.) (characterizing Reata rule as common law modification of immunity). The Reata goal is to provide the party sued an opportunity to assert defensive claims. See Reata , 197 S.W.3d at 374 (stating that where state voluntarily files suit and submits its rights for judicial determination, defense is entitled to plead and prove properly defensive matters).
In Reata , a property owner sued Reata for negligence after Reata drilled into a water main, flooding the property owner's building. Id. at 373. The City of Dallas intervened and alleged negligence against Reata. In turn, Reata filed a third-party claim against the City, alleging that it had negligently misidentified the location of the water main. Id. The City filed a plea to the jurisdiction claiming governmental immunity from suit. Id. The trial court denied the plea, and the court of appeals reversed. Id. at 374. The Texas Supreme Court reversed the court of appeals, reasoning that because governmental immunity is a "common-law doctrine," the judiciary has the responsibility "to define the boundaries of the common-law doctrine" Id. at 373, 375, 378. The Supreme Court held that "the decision by the City of Dallas to file suit for damages encompassed a decision to leave its sphere of immunity from suit for claims against it [that were] germane to, connected with and properly defensive to claims the City assert[ed]" but only to the extent "necessary to offset the City's claims." Id. at 377. In other words, under the holding in Reata , a governmental entity waives its immunity only as to claims asserted by the party it has sued that are related to and defensive to claims the governmental entity has asserted and only up to the amount of damages necessary to offset the governmental entity's claims. See ids="8409239" index="26" url="https://cite.case.law/sw3d/197/371/#p373">id.
Here, the County did not make a decision to seek affirmative relief from Hughes and asserted no claims to which Hughes filed related defensive claims. See id. In fact, the record reflects that Hughes and the County did not assert any claims against each other in the SMU Litigation. The County filed its plea in intervention before Hughes was a party and sought to recover, as part of the residuary estate awarded to the County, the funds in excess of the amount needed by SMU to fully fund the chair in English. Likewise, when Hughes intervened, he requested judgment "against SMU and the Library" for the remainder of the mineral interest granted to SMU, following full endowment of the chair. Hughes and the County had "competing claims" for the funds going to SMU, as Hughes argues, but they did not seek relief from each other. Therefore, the County's intervention in the SMU Litigation does not fall outside the "contours of immunity" set out in Reata. See City of Dall. v. Albert , 354 S.W.3d 368, 374 (Tex. 2011) (explaining that Reata and similar cases did not hold that litigation actions of governmental entities effect waivers of immunity but instead established that those actions were factors to consider in defining "contours of immunity"); see also Reata , 197 S.W.3d at 373, 375, 377.
For the same reason, the MPA was not a settlement agreement in any matter material under the Lawson analysis, as Hughes contends. The language of the MPA did not include any reference to release or settlement of any claims between Hughes and the County; rather, it was in the nature of a joint defense agreement, expressly providing that the MPA did not eliminate their respective claims, that they agreed to pursue the litigation against SMU, and that they would split the proceeds from any settlement with SMU. Simply *7 put, there were no claims between Hughes and the County to settle. Thus, the County did not waive its immunity from suit for breach of the MPA by settling claims against it in a suit for which its immunity was waived because the County did not waive its immunity by intervening in the SMU Litigation, and it did not settle any claims against it in the MPA. See Lawson , 87 S.W.3d at 518, 521, 522-23 (holding that governmental entity is not immune from suit for breach of agreement that settles suit from which it is not immune).
Further, even if we were to somehow construe the MPA as a settlement agreement, the holding in Lawson is limited to circumstances in which the government's immunity is statutorily waived. See ids="9311985" index="31" url="https://cite.case.law/sw3d/87/518/">id. (stating that "[o]nce the Legislature has decided to waive immunity for a class of claims, the inclusion of settlements within the waiver is consistent with that decision" and holding that where there was statutory waiver of immunity, state could not claim immunity from suit brought to enforce settlement agreement reached to dispose of claim brought under statute); Travis Cty., Tex. v. Rogers , No. 03-14-00186-CV, 2015 WL 4718726, at *5, 2015 Tex. App. LEXIS 7766, at *15-16 (Tex. App.-Austin July 29, 2015, no pet.) (mem. op.) (Pemberton, J., concurring) ("Where the Legislature has chosen to waive immunity as to a cause of action against government, government settles the claim, and then government allegedly breaches the settlement agreement and tries to invoke immunity as a bar to any claims for breach, Lawson holds that the immunity that would ordinarily bar the claims for breach (aside from some sort of independent legislative waiver) does not apply."). As this Court concluded in A.I. Divestitures, Inc. v. Texas Commission on Environmental Quality , "[t]he Lawson exception to [governmental] immunity is simply not implicated when there has been no legislative waiver of the [governmental entity's] immunity." No. 03-15-00814-CV, 2016 WL 3136850, at *8, 2016 Tex. App. LEXIS 5787, at *29 (Tex. App.-Austin June 2, 2016, no pet.) (mem. op.); see also Texas A & M Univ. Sys. v. Koseoglu , 233 S.W.3d 835, 838-39 (Tex. 2007) (stating that court of appeals concluded that plaintiff's pleadings did not fit "narrow exception" applied in Lawson and holding that where plaintiff's pleadings did not state claims that were actionable under 42 U.S.C. § 1983, immunity was not statutorily waived, and Lawson was not implicated). Hughes does not allege that the County's immunity is waived by any statute, and in the absence of a statutory waiver, Lawson is not implicated here.[8] See Koseoglu , 233 S.W.3d at 839 ; A.I. Divestitures , 2016 WL 3136850, at *8, 2016 Tex. App. LEXIS 5787, at *29.
Moreover, even if we were to apply the Lawson court's holding to judicially created "exceptions" such as that in Reata , there would be no waiver of immunity here because, as discussed above, the County's intervention in the SMU Litigation does *8 not fall within the judicial limitation on the "contours of immunity" applied in Reata , and the County, therefore, is not immune from suit. See Albert , 354 S.W.3d at 374 ; Reata , 197 S.W.3d at 373, 375, 377. Thus, the MPA did not settle claims for which the County's immunity was waived. We overrule Hughes's first issue.
"Waiver by Conduct "
In his second issue, Hughes argues that the County waived immunity from suit by its conduct. Hughes relies on Federal Sign v. Texas Southern University , in which the Texas Supreme Court declined to find that the university waived its immunity by contracting with a private party but, in a footnote, left open the door for the possibility of "waiver by conduct" in "other circumstances." See 951 S.W.2d 401, 408 n.1 (Tex. 1997), superseded by statute as stated in General Servs. Comm'n v. Little-Tex Insulation, Co. , 39 S.W.3d 591, 593 (Tex. 2001). However, the ostensible "waiver-by-conduct" exception to immunity from suit has not been embraced by Texas courts. In Little-Tex Insulation Co. , the Supreme Court retreated from the language in Federal Sign , concluded that "there is but one route to the courthouse from breach-of-contract claims against the State, and that route is through the Legislature.... Apart from a special statute conferring consent, a party simply cannot sue the State for breach of contract absent legislative consent under Chapter 107 [of the Texas Civil Practice and Remedies Code]," and refused to "intercede ... by judicially adopting a waiver-by-conduct doctrine." 39 S.W.3d at 597 ; see Tex. Civ. Prac. & Rem. Code §§ 107.001 -.007 (providing procedure for person to seek legislative consent to sue government).
Since then, the Supreme Court and this Court have repeatedly declined to apply a waiver-by-conduct theory. See, e.g., Sharyland Water Supply Corp. v. City of Alton , 354 S.W.3d 407, 414 (Tex. 2011) (stating that by providing statutory avenues for redress,[9] "the Legislature has balanced competing private and public interests-a balance that would be thwarted if we allowed waiver-by-conduct exceptions in breach-of-contract actions against the government"); Koseoglu , 233 S.W.3d at 840 ("[W]e have consistently ... held that 'the State does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract.' ") (quoting Little-Tex Insulation , 39 S.W.3d at 598 ); Catalina Dev., Inc. v. County of El Paso , 121 S.W.3d 704, 706-07 (Tex. 2003) (observing that contract formation alone is not sufficient to waive governmental unit's immunity from suit, concluding that complained-of conduct did not fall outside realm of contract formation, and declining to find waiver by contract); Texas Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 857 (Tex. 2002) ("Creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections-and this would defeat many of the doctrine's underlying policies."); Employees Ret. Sys. of Tex. v. Putnam, LLC , 294 S.W.3d 309, 327 (Tex. App.-Austin 2009, no pet.) (observing that Texas Supreme Court "once hinted that it might recognize waiver by conduct in the context of a contract claim" but has since declined to adopt doctrine);
*9 Smith v. Lutz , 149 S.W.3d 752, 761 (Tex. App.-Austin 2004, no pet.) (declining to recognize waiver by conduct in absence of guidance from Texas Supreme Court as to what conduct would justify waiver).
As this Court stated in Carowest ,
Carowest's notion that the City can unilaterally waive its governmental immunity through its own actions traces back to the Texas Supreme Court's now-infamous footnote in Federal Sign v. Texas Southern University intimating that "[T]here may be ... circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." But in the years since it decided Federal Sign , the high court has clarified-and repeatedly emphasized-that it defers to the Legislature, not the actions of individual governmental units, to determine whether, when, and how sovereign or governmental immunity should be waived. In so doing, moreover, it has squarely rejected the notion that a governmental entity with authority to enter contracts, or an agent acting on its behalf, can contractually waive immunity from suit, as Carowest insists occurred here. It has similarly declined repeated requests to recognize a "waiver by conduct," and has never gone further than its suggestion in Federal Sign that such a waiver might conceivably occur under some set of facts it has not yet seen. Similarly, in the absence of further guidance from the supreme court, this Court (at least in recent years) has consistently rejected requests that we recognize "waivers by conduct" under a variety of factual scenarios.
432 S.W.3d at 521 (citations omitted).
Hughes cites Texas Southern University v. State Street Bank & Trust Co. , in which the First Court of Appeals upheld the trial court's denial of the university's plea to the jurisdiction based on the "extraordinary factual circumstances" presented. See 212 S.W.3d 893, 900 (Tex. App.-Houston [1st Dist.] 2007, pet. denied). In State Street , the governmental entity induced a private party into a contract with promises, including a letter from its general counsel stating that the contract would be valid and enforceable, and then disclaimed any obligation for $13 million in equipment and services that it received by declaring that the agreement was not valid and refusing to make payments that were due. Id. at 897-99, 907-08. Hughes contends that, as in State Street , the facts of this case support waiver by conduct. He cites the following conduct: The County executed the MPA; accepted Hughes's performance at mediation and the settlement funds, which exceeded the asking price of the new main library building; ratified the MPA; deposited the settlement proceeds in the Hughes Library Fund; and then did not name the library after Duwain Hughes.
However, State Street is the only case of which we are aware that has applied the waiver-by-conduct exception, and this Court has previously declined to follow State Street. In Labrado v. University of Texas at El Paso , this Court concluded that the facts did not parallel those in State Street and noted that this Court does "not have discretion to recognize the underlying exception to sovereign immunity in the absence of supreme court authority." No. 03-10-00009-CV, 2012 WL 43385, at *3 n.5, 2012 Tex. App. LEXIS 123, at *10 n.5 (Tex. App.-Austin Jan. 5, 2012, no pet.) (mem. op.); see W.W. Webber, L.L.C. v. Harris Cty. Toll Rd. Auth. , 324 S.W.3d 877, 883 (Tex. App.-Houston [14th Dist.] 2010, no pet.) (observing that Texas Supreme Court denied university's petition for review in State Street , "thereby declining *10 to confirm or deny the existence or scope of the waiver-by-conduct exception").
On the facts before us and in the absence of guidance from the Texas Supreme Court as to what actions might justify waiver by conduct, we decline to apply the "waiver-by-conduct" exception to governmental immunity to the complained-of conduct in this case. See Labrado , 2012 WL 43385, at *3 n.5, 2012 Tex. App. LEXIS 123, at *10 n.5 (concluding that record did not support contention that there were "extraordinary factual circumstances" as in State Street and declining to recognize waiver-by-conduct exception in absence of Texas Supreme Court authority); Smith v. City of Blanco , No. 03-08-00784-CV, 2009 WL 3230836, at *4, 2009 Tex. App. LEXIS 7889, at *8-9 (Tex. App.-Austin Oct. 8, 2009, no pet.) (mem. op.) (observing that there is "no supreme court decision approving of a specific waiver by conduct," concluding that conduct at issue was not comparable to the "egregious conduct" in State Street , and declining to hold that city waived immunity by its conduct); Lutz , 149 S.W.3d at 761 ("If the supreme court intends to recognize certain conduct as waiving immunity, we await its lead in identifying what that conduct might be."). As this Court concluded concerning the university's conduct in Lutz , we likewise conclude here that "[u]nder the existing state of the law," the County did not waive its governmental immunity from suit on the MPA by its conduct. See itation case-ids="9146237" index="58" url="https://cite.case.law/sw3d/149/752/#p761">id. We overrule Hughes's second issue.
CONCLUSION
Having overruled Hughes's issues, we affirm the trial court's order granting the County's plea to the jurisdiction as to Hughes's claims based on the MPA.

Other heirs intervened in the SMU Litigation and were parties to the agreement forming the basis of Hughes's breach of contract claim, but they are not parties to this appeal.

Specifically, Hughes alleged that the gift to SMU created a vested remainder subject to complete defeasance, which was defeased upon completion of the endowment, or a fee simple determinable that automatically terminated upon completion of the endowed chair, causing ownership of the mineral rights to revert to Duwain Hughes's heirs. Under either theory, Hughes argued, SMU's interest terminated, and because Duwain Hughes had failed to specify to whom it was to pass next, Duwain Hughes's heirs automatically became vested.

The MPA provided that each party would assign to the other 50% of the net proceeds it received from settlement of the SMU Litigation. It appears from the record that no assignments were ever made and that instead the parties simply split the proceeds.

The will authorized the County to sell the home if it "fail[ed] to be useful" as a library and to use the proceeds for the purchase of books and materials for the Tom Green County Library.

In his open meetings claim, which remains pending before the trial court and is not before us in this appeal, Hughes asserts that the County violated the Open Meetings Act by taking the official vote to name the new main library outside of open session and seeks to have the resolution naming the library declared void and set aside.

Hughes later replaced his claim for unjust enrichment with an "Action for Money Had and Received," containing virtually identical allegations. At the hearing on the plea to the jurisdiction, Hughes stated that he had withdrawn the claim for unjust enrichment and offered to stipulate that he did not intend to pursue it. To the extent Hughes intended to retain his claim for money had and received based on the County's acceptance of the settlement proceeds pursuant to the MPA, it was dismissed by the trial court's order dismissing all claims "pertaining to the [MPA]." On appeal, Hughes asserts no arguments specifically concerning that claim.

The County points out that Lawson was a plurality opinion and argues that it is not binding. However, subsequent Texas Supreme Court holdings have followed it. See, e.g., City of Hous. v. Estate of Jones , 388 S.W.3d 663, 665 (Tex. 2012) (explaining prior remand to give plaintiff opportunity to revise argument based on holding in Lawson ); Texas A & M Univ. Sys. v. Koseoglu , 233 S.W.3d 835, 838-39 (Tex. 2007) (applying Lawson rule and concluding it was not implicated on facts of case).

Hughes contends that at the hearing on the plea to the jurisdiction, the County agreed that Lawson applied to this case. However, the record reflects that the County stated only that if SMU, against whom the County asserted claims, were the party claiming breach of contract, "that would be an easy recognizable exception to immunity if that was the factual scenario in this case, but it isn't." In any event, the County cannot confer jurisdiction on the trial court by its agreement; instead, only the Legislature can. See Koseoglu , 233 S.W.3d at 839 (stating that "[i]t is up to the Legislature" to institute waiver of immunity); Mission Consol. Indep. Sch. Dist. v. Garcia , 253 S.W.3d 653, 660 (Tex. 2008) (" '[I]t is the Legislature's sole province to waive or abrogate sovereign immunity.' ") (quoting Texas Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 853 (Tex. 2002) ).

See Tex. Gov't Code §§ 2260.001 -.108 (providing procedure for independent contractor to seek resolution of claim against state through contested case hearing); Tex. Civ. Prac. & Rem. Code §§ 107.001 -.007 (providing procedure for seeking legislative consent to sue government).