# IN THE SUPREME COURT OF TEXAS

No. 17-0409

CHARLES J. HUGHES, PETITIONER,

v.

TOM GREEN COUNTY, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

JUSTICE BOYD, joined by JUSTICE LEHRMANN and JUSTICE BROWN, concurring in the judgment.

In an earlier probate proceeding, Charles Hughes and Tom Green County both claimed ownership of the same mineral interests. They ultimately settled those competing claims. Hughes now alleges the County breached that settlement agreement, and the Court holds that governmental immunity does not bar Hughes's claim against the County for that breach. — S.W.3d —, —. I agree with that result, but not with the Court's analysis, which misapprehends both governmental immunity and our holding in *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006).

## I.

The Court holds that the County's decision to intervene in the probate proceeding and assert an affirmative claim to the mineral interests "abrogated the County's

governmental immunity as in *Reata*." — S.W.3d at —. But *Reata* is irrelevant here because the claim Hughes asserted in the probate proceeding never implicated the County's immunity at all. We held in *Reata* that when a governmental entity voluntarily engages in litigation and asserts an affirmative claim for money damages, immunity does not apply to the defendant's counterclaims against the governmental entity if those counterclaims are "germane to, connected with, and properly defensive to" the governmental entity's claims, to the extent the counterclaims serve only to offset the amount of the governmental entity's recovery. 197 S.W.3d at 376–77. In the probate proceeding here, however, Hughes asserted a *competing* claim to the mineral interests, not a *counter*claim *against* the County.

The probate proceeding's procedural background demonstrates why *Reata* has nothing to do with this case. Southern Methodist University initiated the *in rem* probate litigation seeking a judicial release of a will's restriction on SMU's use of the disputed mineral interests. At that time, of course, the lawsuit involved only SMU. The County promptly intervened and *sought a declaration* that the disputed mineral interests belonged to its local library. Almost two years later, Hughes intervened and *sought a declaration* that those interests belonged to him and the testator's other heirs. Although three parties ultimately competed for the mineral interests, no one asserted *any* claim—much less a claim for money damages—against the County. The County did not seek dismissal of Hughes's or SMU's claims; it knew as well as anyone that those claims did not implicate the County's governmental immunity.

2

If the County had filed a jurisdictional plea or motion to dismiss Hughes's claim in the probate proceeding, the trial court would (or, at least, should) have denied the plea outright—not because *Reata*'s abrogation rule applied, but because immunity did not apply at all. Governmental immunity bar suits and claims *against* the state and its political subdivisions. *Id.* at 374; *see also Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018) ("The common-law doctrine of sovereign immunity prohibits suits *against the state* unless the state consents and waives its immunity.") (emphasis added). It does not bar claims that *compete with* a governmental entity's claims to property held by another. Because Hughes never asserted claims against the County in the probate proceeding, we need not concern ourselves with whether the County voluntarily engaged in the litigation, whether Hughes's claim to the mineral interests was germane, connected, and properly defensive to the County's competing claim to the same interests, or whether Hughes's claim would serve to offset the County's recovery. Governmental immunity simply did not apply to Hughes's claim, and *Reata* is irrelevant to that analysis.

For centuries, courts and commentators have agreed that sovereign immunity bars suits and claims that private parties initiate against the government. English law recognized that "no suit or action can be brought *against the king*, even in civil matters, because no court can have jurisdiction over him." 1 WILLIAM BLACKSTONE, COMMENTARIES *242 (emphasis added). Based on that tradition, the U.S. Supreme Court has long admonished that "the entire judicial power granted by the Constitution does not embrace authority to

entertain a suit brought by private parties *against a state* without consent given." *In re State of New York*, 256 U.S. 490, 497 (1921) (emphasis added); *see also Beers v. State*, 61 U.S. (20 How.) 527, 529 (1857) (calling sovereign immunity "an established principle of jurisprudence in all civilized nations"). And this Court too, in refining its own body of immunity jurisprudence, has followed the same rule: a "suit *against the State*" is generally forbidden "without the consent of the Legislature." *Griffin v. Hawn*, 341 S.W.2d 151, 152 (Tex. 1960) (emphasis added); *see Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002) (virtually same).

But immunity is not implicated just because the government is a party to a lawsuit. Courts must have jurisdiction over *some* cases in which the government is a party, or else the government could never initiate or intrude in litigation. *See* JOSEPH STORY, A FAMILIAR EXPOSITION OF THE CONSTITUTION OF THE UNITED STATES § 332 (The Lawbook Exchange, Ltd. 1999) (1840) (explaining that article III, section 2 of the federal Constitution was meant to allow the government to sue to enforce its own rights and privileges); *Emp's of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 317 (1973) (Brennan, J., dissenting) (highlighting the framers' belief that a suit could be maintained "where the State is the plaintiff or an intervenor"); *Kinnear v. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000) (per curiam) (recognizing that the Commission's immunity from suit was not at issue because "the Commission initiated this proceeding"). Here, the trial court had jurisdiction to resolve the County's claim to the

4

mineral interests. Hughes's competing claim asserting ownership of those same interests did not implicate governmental immunity because Hughes did not assert any claims *against* the County.[1] And when governmental immunity does not apply, it need not and cannot be "abrogated"—under *Reata* or any other theory.

## II.

In *this* proceeding, however, Hughes does assert a claim *against* the County, seeking damages for the County's alleged breach of the parties' agreement to settle their competing claims in the probate proceeding. Generally, governmental immunity bars a contract claim for damages against a governmental entity unless the legislature has waived that immunity. *See Nazari*, 561 S.W.3d at 500. A plurality of the Court recognized an exception to that general rule in *Texas A & M University–Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002) (plurality op.). The plurality reasoned that "when a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Id.* at 521. In other words, "having waived immunity from suit in the Whistleblower Act, the State [could] not now claim immunity from a suit brought to enforce a settlement agreement reached to dispose of a claim brought under that Act." *Id.* at 522–23. A claim seeking "enforcement of a settlement of a liability for which immunity is waived [is not] barred by immunity." *Id.* at 521.

---

[1] *Cf. Hughes v. Tom Green Cty.*, 553 S.W.3d 1, 6 (Tex. App.—Austin 2017) (mem. op.) (clarifying that although "Hughes and the County had 'competing claims' for" the disputed interests, "they did not seek relief *from each other*") (emphasis added); *see also id.* ("In fact, the record reflects that Hughes and the County did not assert any claims *against each other* in the [probate proceeding].") (emphasis added).

This case differs from *Lawson* in that Hughes is not suing for breach of an agreement settling claims for which the legislature had *waived* the County's immunity. Hughes had no need to argue waiver in the probate proceeding because he asserted no claims against the County, so governmental immunity did not apply at all. But the plurality's holding in *Lawson* was not limited to situations in which immunity was waived: "If a government entity agrees to settle a lawsuit from which it *is not immune*, [it cannot] claim immunity from suit for breach of the settlement agreement." *Id.* at 518 (emphasis added). Here, the County agreed to settle Hughes's competing claim in the probate proceeding, and immunity did not bar that claim. Under *Lawson*, immunity does not bar Hughes's claim for breach of that agreement.

## III.

Governmental immunity does not bar Hughes's claim for the County's alleged breach of the parties' settlement agreement because immunity did not bar the claim the parties settled. But *Reata* has nothing to do with that conclusion. I respectfully disagree with the Court's reasoning, but I concur in its judgment.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: March 8, 2019

6